UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHE DURBIN, SR.,

    Plaintiff,

    v.

THOMAS L. WOLFE, *et al.*,

    Defendants.

Civil Action No. JRR-23-2798

**MEMORANDUM OPINION**

*Pro se* Plaintiff Che Durbin, Sr., presently incarcerated at FCI Ray Brook, in Ray Brook, New York, filed the instant Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1; "the Complaint.") Plaintiff names as Defendants Thomas L. Wolfe, Warden Chesapeake Detention Center ("CDF"), and Unknown Correctional and Medical Officers. *Id.*

This matter comes before the Court on Defendant Wolfe's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 18; the "Motion"), Mr. Durbin's opposition to same at ECF No. 20,[1] and Defendant Wolfe's Reply (ECF No. 21). The court has reviewed the papers and finds a hearing unnecessary. Loc. R. 105.6 (D. Md. 2023). For the reasons set forth herein, by separate accompanying order, the Motion, construed as one for summary judgment, is granted for failure to exhaust administrative remedies.

**I.   BACKGROUND – UNDISPUTED FACTS**

**The Complained-of Incidents**

Except where indicated, the following facts are undisputed:

---

[1] The unknown correctional and medical staff have not been served with the Complaint. For the reasons explained herein, summary judgment shall be entered in favor of all Defendants.

Mr. Durbin, who was a pretrial detainee at CDF from September 2021 until December 29, 2022 (ECF No. 18-4, ¶ 3[2]), alleges that on April 11, 2022, he was stabbed in the left eye by an unidentified inmate. ECF No. 1 at 5. In December of 2021, he underwent a surgical repair of a ruptured Achille's tendon. *Id*. Mr. Durbin asserts that prior to his stabbing "there was ongoing and imminent violence perpetrated in the Chesapeake Detention Center," which was known to prison staff. *Id*. Before the assault, Mr. Durbin asked unidentified correctional officers why he was being placed on a regular unit when he was on crutches; he was advised that he was on a regular unit because "it was more convenient for the Marshals to take [him] to Court." *Id*. at 6. Mr. Durbin told staff that he would be unable to defend himself on a regular unit, but the officers "responded with silence and a shrug of their shoulders." *Id*. Mr. Durbin states that on several other occasions prior to the attack he told officers on his cell block that he did not feel safe and that due to his injury he could not defend himself. *Id*.

There is no record that Mr. Durbin reported to staff that he was fearful of another inmate or that he requested to be placed away from the general population. ECF No. 18-4, ¶ 4. Warden Thomas L. Wolfe had no knowledge that Mr. Durbin's assailant intended to harm him and Mr. Durbin never informed staff he was fearful of this assailant or any other inmate. *Id.* ¶ 6. Warden Wolfe had no interaction with Mr. Durbin and learned of the April 10, 2022, assault the day it occurred when one of his shift commanders informed him. *Id.* ¶ 2. Warden Wolfe attests that the mere fact that Mr. Durbin was on crutches would not have necessitated his being transferred out of general population under Department of Public Safety and Correctional Services ("DPSCS")

---

[2] To the extent the Court will consider exhibits outside of the pleadings regarding exhaustion of administrative remedies, Defendant's motion will be considered under the summary judgment standard set forth more fully below. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

protocols, and a number of inmates in wheelchairs are housed in general population throughout DPSCS facilities. *Id*.

After the assault, Captain Dabbs prepared a Serious Incident Report. ECF No. 18-4, ¶ 5; ECF No. 18-6.  Mr. Durbin refused to answer questions about the incident but when asked if he feared for his safety, Mr. Durbin replied, "No." ECF No. 18-6 at 1.  According to the incident report, during the investigation, contrary to Mr. Durbin's Complaint allegations, his assailant was identified as his co-defendant; and the assailant explained that Mr. Durbin had snitched during their trial and he had "wait[ed] for a chance to get at him and today was the day." *Id*.

In his Complaint, Mr. Durbin alleges he filed an administrative grievance, which was summarily denied by the Warden. ECF No. 1 at 2.  (Contrary to his assertion set forth in the Complaint, Mr. Durbin did not attach a copy of the grievance to his Complaint.)  A month after he filed the grievance, the Warden denied it and forwarded the denial to Mr. Durbin at his place of incarceration in Warsaw, Virginia. ECF No. 1 at 2; ECF No. 18-2.

Mr. Durbin asserts that the Warden's denial did not comply with 28 C.F.R. § 14.9(a) and he was not provided additional notice on whether the Warden's denial was final or the next steps in his appeal. ECF No. 1 at 2.  Warden Wolfe does not recall the date the grievance was received, but attests that, when he received it, he noted that the incident complained of occurred many months earlier and that, as a result, the grievance untimely. ECF No. 18-4, ¶ 7; ECF No. 18-3. Mr. Durbin used a Federal Bureau of Prison "Request for Administrative Remedy" rather than a CDF grievance form. ECF No. 18-3.  The grievance was dated December 12, 2022, and raised concerns about the medical care provided to him relative to his ruptured Achille's tendon as well as the April 2022 assault. *Id*.

**Grievance Process and Procedures**

Warden Wolfe attests, and Mr. Durbin does not challenge, that as a federal pretrial detainee housed at CDF, Mr. Durbin's grievance process is governed by the Federal Detention Standards. ECF No. 18-4, ¶ 7. In compliance with those standards, CDF has promulgated binding procedures for inmate grievances. *Id.*; ECF No. 18-5. Pursuant to those procedures, "a detainee must file an informal or formal grievance within 30 days of the actual incident, or situation, or within 30 days of the detainee becoming aware of the incident or situation." ECF No. 18-4 ¶ 7; ECF No. 18-5, Sec. 05.A.4. If the detainee is not satisfied with the results of the informal grievance, he may file a formal appeal to the Warden within 10 business. ECF No. 18-5, Sec. 05.A.8; Sec. 05.B. Informal grievance complaint forms are located in each housing unit (ECF No. 18-5, Sec. 05.O.a) and are to be submitted by placing them in the mailbox located near the Sergeant's Station, with complaint boxes located on each quad. *Id.*, Sec. 05.O.c. Additionally, CDF has promulgated an Informal Inmate Complaint Form to be utilized by detainees (ECF No. 18-5 at 7), as well as a Detainee Grievance Appeal Form (*id.* at 9).

Following receipt of Mr. Durbin's grievance, the Warden advised him in writing that his complaints regarding lack of medical care and failure to protect were investigated, and it was determined there was "no evidence of deliberate indifference as you contend." ECF No. 18-2.

Through the Motion, Defendant Wolfe argues he is entitled to dismissal of the Complaint or, alternatively, summary judgment because Mr. Durbin: (1) failed to exhaust his administrative remedies; (2) fails to state a claim against for which relief may be granted as to Defendant Wolfe; (3) and Defendant Wolfe is entitled to qualified immunity.

## II.     LEGAL STANDARDS

**Federal Rule 12(b)(6)**

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

**Federal Rule 56**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

Courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).  "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Id.* (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).  "In other words, a factual dispute is genuine only where 'the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find' in its favor." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988)).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).

While self-represented pleadings and papers are liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt,* 999 F.2d at 778-79, and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Exhibits to the Motion & Conversion of the Motion to One for Summary Judgment**

Defendant attaches exhibits in support of his Motion. When deciding a motion to dismiss under Rule 12(b)(6), a court typically considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat the Motion as a motion for summary judgment where matters outside the pleadings are not excluded from consideration in the court's resolution of the Motion (*i.e.,* where the court considers exhibits to the motion). FED. R. CIV. P. 12(d).

Importantly, "[t]here are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware

'material outside the pleadings is before the court.'" *Snyder v. Md. Dept. of Transportation,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).  Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Interest Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

The present case meets both requirements.  First, Mr. Durbin had adequate notice that the Motion may be treated as a motion for summary judgment.  *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (explaining that "[b]ased upon the caption alone, [the plaintiff] was on notice that this motion might be treated as one for summary judgment").  Second, Mr. Durbin, does not suggest or assert that additional discovery is necessary, and did not submit a Rule 56(d) affidavit.  *Harrods Ltd.*, 302 F.3d at 244 (explaining that "[i]f a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'") (quoting *Evans*, 80 F.3d at 961); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (explaining that the failure to file an affidavit indicating a need for discovery "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.").[3]  Accordingly, the Court will treat the Motion as one for summary judgment.

---

[3] Because the Court construes broadly all filings of self-represented parties, the Court also notes that nothing in Mr. Durbin's opposition could be construed to suggest that he required or requested that he be provided more information or opportunity to investigate his claims, or the like.  Therefore, Mr. Durbin provided no Rule 56(f) affidavit or its facsimile.

### III. DISCUSSION AND ANALYSIS

In support of his Motion, Defendant submits the March 27, 2023, letter from Warden Wolfe to Mr. Durbin concerning his complaint (ECF No. 18-2); Mr. Durbin's December 12, 2022, "Inmate Request to Staff" regarding the April 11, 2022, assault (ECF No. 18-3); the Affidavit of Warden Wolfe (ECF No. 18-4); the CDF Directive regarding inmate grievance/complaint process (ECF No. 18-5); and an April 10, 2022, Serious Incident Report concerning the assault on Mr. Durbin (ECF No. 18-6).

**Prisoner Litigation Reform Act and Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act ("PLRA") provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Under the PLRA, "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id*. § 1997e(h). The term "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).

9

The court may dispose of a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.[4] *Moore*, 517 F.3d at 729; *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Although the PLRA requires a prisoner to exhaust available remedies, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The PLRA's exhaustion requirement serves several purposes, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (explaining that exhaustion provides

---

[4] As noted, CDF provides detainees a grievance process. ECF No. 18-5 at 1. That process provides, among other things, that grievances must be filed within one month of the inciting events. ECF No. 18-5, Sec. 05.A.4.

prison officials with the opportunity to respond to a complaint through appropriate administrative remedies). The PLRA's exhaustion requirement obligates prisoners to pursue the administrative grievance avenue until they receive a final denial of the claims, having pursued the administrative appellate process to its end. *Chase v. Peay*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the administrative grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (holding that prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Here, Mr. Durbin's grievance regarding the April 11, 2022, assault is dated December 12, 2022, eight months after the attack. For the first time in his Reply, Mr. Durbin baldly asserts that he was informed that no official grievance process existed. ECF No. 20 at 3. Mr. Durbin provides no admissible support for this assertion and it is materially at odds with both his filing of a grievance regarding the assault and his assertion in his initial Complaint that he properly exhausted administrative remedies by filing the December grievance and the Warden's response. Mr. Durbin's assertion via his Reply fails to generate a triable issue as to the timeliness of his grievance.

Additionally, Mr. Durbin asserts that he properly exhausted his claim because the Warden violated 28 C.F.R. § 14.9(a) and, as such, his time for exhausting his administrative remedies should be extended and/or his efforts should be deemed sufficient. His argument is unavailing.

11

The section of the Code of Federal Regulations he cites does not govern his grievance, but rather governs claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

There is no dispute of fact that Mr. Durbin untimely initiated the grievance process and thereafter failed to take further action after his grievance was rejected; and he has not offered a sufficient explanation for his failure to timely institute the grievance process. Additionally, there is no dispute of material fact that, although Mr. Durbin filed a grievance with respect to the assault, he failed to do so properly.[5] Therefore, Defendant is entitled to judgment as a matter of law.[6]

## II.   CONCLUSION

For the foregoing reasons, the Motion, construed as one for summary judgment, will be granted. A separate order follows.

June 18, 2025

/S/
_____
Julie R. Rubin
United States District Judge

---

[5] For the reasons stated *infra*, the Court agrees with Defendant that Mr. Durbin's claim is unexhausted. Therefore, the Court will not address Defendant Wolfe's additional defenses.

[6] To the extent Mr. Durbin asserts state law negligence claims, those claims are dismissed without prejudice. This Court has original subject matter jurisdiction over any federal claim, pursuant to 28 U.S.C. § 1331(a)(1), which "confers upon district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012). However, the Court does not have original jurisdiction over Mr. Durbin's State law claims, and so the Court is only authorized to resolve those claims pursuant to the grant of supplemental jurisdiction in 28 U.S.C. § 1367(a). Pursuant to § 1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." In *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995), "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." In the absence of viable claims that come within federal question jurisdiction, the Court exercises its discretion and declines to exercise supplemental jurisdiction over Mr. Durbin's negligence claims which are governed by State law.